Charles A. FRITTS and Joyce Ann Fritts, Plaintiffs,

v.

Trooper Robert L. NIEHOUSE, et al., Defendants.

No. 83–4324–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Sept. 17, 1984.

D. Patrick Sweeney, David W. Ansley, James B. Condry, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Mo., Philip S. Huffman, Hartville, Mo., for plaintiffs.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Presently pending before the Court is defendant Niehouse's motion to dismiss Count V of the first amended complaint. Counts I through IV, asserted solely by plaintiff Charles Fritts, involve a § 1983 claim as well as pendent state law claims for assault, battery, and false imprisonment. Count V is a loss of consortium claim asserted solely by Charles Fritts's wife, Joyce Fritts.

The difficult legal issue presented here is whether the Court has subject matter jurisdiction over Joyce Fritts's consortium claim. The jurisdictional bases of Charles Fritts's lawsuit are 28 U.S.C. §§ 1331, 1343. Diversity does not exist between the plaintiffs and defendants. Defendant Niehouse contends that, in the absence of an independent basis of subject matter jurisdiction, Count V must be dismissed. Plaintiffs rely upon *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966), and assert that the consortium claim is cognizable under the Court's pendent jurisdiction.[1]

In analyzing this issue, the Court has considered four plausible arguments: (1) the Court has independent subject matter jurisdiction over the consortium claim; (2) the Court has ancillary jurisdiction over the consortium claim; (3) the Court has pendent jurisdiction over the consortium claim; and (4) the Court lacks jurisdiction over the consortium claim. For the reasons set forth below, the Court must reject the first three alternatives and accept the last one. Consequently, Count V will be dismissed, not as a matter of discretion, but for want of federal subject matter jurisdiction.

### I. No Independent Subject Matter Jurisdiction over Count V

■ The weakest argument in support of jurisdiction over Joyce Fritts's consortium claim is that the Court has independent subject matter jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1343. The problem with this argument is that the right of consortium is grounded solely in state law. E.g., Manley v. Horton, 414 S.W.2d 254 (Mo.1967); Shepherd v. Consumers Cooperative Ass'n, 384 S.W.2d 635 (Mo.1964) (en banc). The right of consortium has never been identified as a sub-

stantive federal right. E.g., Buikema v. Hayes, 562 F.Supp. 910 (N.D.Ill.1983); Walters v. Village of Oak Lawn, 548 F.Supp. 417 (N.D.Ill.1982); Leopold v. Birkett, 523 F.Supp. 525 (E.D.N.Y.1981). Thus, the consortium claim is not directly cognizable under the federal question jurisdictional statute nor under the civil rights jurisdictional statute because Joyce Fritts has not alleged any deprivation of a federal right. See Missouri ex rel. Gore v. Wochner, 620 F.2d 183 (8th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980) (no § 1343 jurisdiction over state law claim); Schantz v. White Lightning, 502 F.2d 67 (8th Cir.1974) (no § 1331 jurisdiction over state tort claim); see also Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (not every deprivation of state law rights by state officers is actionable under 42 U.S.C. § 1983).

### II. No Ancillary Jurisdiction over Count V

■ The second argument in support of federal court jurisdiction over Joyce Fritts's consortium claim is that it is ancillary to her husband's cause of action. Although the distinction between "ancillary jurisdiction" and "pendent jurisdiction" is less than clear in situations like the one presented here,[2] the term "ancillary juris-

---

1. Defendant does not contend that the Court lacks jurisdiction over Charles Fritts's state law claims. Indeed, in view of the factual similarity between Charles Fritts's federal and state claims, the latter fall squarely within the Court's pendent claim jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. at 725–27, 86 S.Ct. at 1138–39. The difficulty with Count V, however, inheres in the fact that Joyce Fritts is attempting to assert her consortium claim under the doctrine of pendent party jurisdiction. See Aldinger v. Howard, 427 U.S. 1, 14–16, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976) (pendent party jurisdiction more difficult to maintain than pendent claim jurisdiction).

2. See, e.g., Buikema v. Hayes, 562 F.Supp. at 911 (discussing pendent and ancillary jurisdiction as one concept); Walters v. Village of Oak Lawn, 548 F.Supp. at 419–20 (same); see generally C. Wright, Handbook of the Law of Federal Courts § 9, at 23–24 (3d ed. 1976); id. § 19, at 75–77. Generally, the term "pendent jurisdiction" is

used in analyzing situations where a plaintiff attempts to join a non-federal claim against an existing defendant or to join an additional defendant over whom independent federal jurisdiction is lacking. In contrast, the term "ancillary jurisdiction" typically is used where a nonparty requests leave to intervene as of right in an ongoing lawsuit or where a defendant seeks to assert a compulsory counterclaim, crossclaim, or third-party claim. In addition to this plaintiff/non-plaintiff dichotomy, a further distinction between the two doctrines is that even where the power of pendent jurisdiction exists, the Court retains discretion to decline exercising this power. United Mine Workers of America v. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. In contrast, where the power to exercise ancillary jurisdiction exists, considerations of judicial discretion ordinarily are not implicated. See, e.g., Baker v. Gold Seal Liquors, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). Aside from these two differences, it is uncertain whether there are any other distinc-

diction" is employed in the instant case only in analyzing whether, treating Count V as an application by Joyce Fritts to intervene as of right, intervention would be permitted.[3] Ancillary jurisdiction is said to exist where a nonparty is granted leave to intervene as of right pursuant to Fed.R. Civ.P. 24(a). *E.g., Owen Equip. & Erection Co. v. Kroger,* 437 U.S. at 375 n. 18, 98 S.Ct. at 2403 n. 18. Thus, if Joyce Fritts's consortium claim satisfies the requirements of Fed.R.Civ.P. 24(a)(2), ancillary jurisdiction over Count V would exist.[4]

tions between pendent and ancillary jurisdiction. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 370 n. 8, 98 S.Ct. 2396, 2401 n. 8, 57 L.Ed.2d 274 (1978).

3. In general, there are two threshhold requirements to ancillary jurisdiction. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. at 376, 98 S.Ct. at 2404. First, the ancillary claim must be logically dependent on the main claim. *Id.* This requirement is satisfied in the instant case because Mrs. Fritts's consortium claim is derivative of, and dependent upon, her husband's claim. *E.g., Burrow v. Moyer,* 519 S.W.2d 568, 572 (Mo.App.1975). The second, and more problematic, threshhold requirement is that the ancillary claim must be asserted "by a defending party haled into court against his will, or by another person whose right might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. at 376, 98 S.Ct. at 2404. Since Joyce Fritts is a plaintiff in this action and has not been "haled into court against her will," the issue here is whether her right of consortium would be "irretrievably lost" unless she could assert it in this federal court proceeding.

Ordinarily, the test of whether a person's rights would be "irretrievably lost" is identical to the standard for intervention as of right embodied in Fed.R.Civ.P. 24(a). In the instant case, however, this issue is further complicated by Mo.R.Civ.P. 66.01(c), which provides that, upon notice by the defendant, the claims of the injured spouse and the consortium spouse must be joined in "one action." *See, e.g., Cline v. Carthage Crushed Limestone Co.,* 504 S.W.2d 118, 120–21 (Mo.1974) (if defendant gave proper notice, consortium spouse is barred from maintaining separate action). In view of this rule of Missouri civil practice, the Court has carefully considered whether dismissal of Count V would cause Joyce Fritts's consortium claim to be "irretrievably lost" and has concluded that Mo.R. Civ.P. 66.01(c) would not bar a separate state court action by Mrs. Fritts to assert her right of

In order to intervene as of right, a prospective intervenor must establish four conditions: (1) her motion must be timely; (2) she must have a significantly protectable interest relating to the subject matter of the primary lawsuit; (3) the disposition of the primary lawsuit must threaten to impair her ability to protect that interest; and (4) her interest must not be adequately represented by existing parties. *United Nuclear Corp. v. Cannon,* 696 F.2d 141, 143 (1st Cir.1982). The first two parts of this test are easily satisfied in

consortium. Two reasons support this conclusion. First, the language and underlying policy of the Missouri procedural rule indicate that it is designed merely to preclude multiple actions for personal injuries and loss of consortium in Missouri state courts. *See Furlow v. Campbell,* 459 S.W.2d 284, 286 (Mo.1970) (Mo.R.Civ.P. 66.-01(c) was designed to promote efficiency in the Missouri state court system). Thus, the Missouri procedural rule simply is not implicated here because, consistent with the rule, Mrs. Fritts's lawsuit will be the "one action" burdening the state courts. Consequently, as a matter of Missouri law and policy, it appears that Mo.R.Civ.P. 66.01(c) will not cause the consortium claim to become "irretrievably lost." *See Cline v. Carthage Crushed Limestone Co.,* 504 S.W.2d at 121 (Missouri procedural rules "should never be so interpreted ... as to work a denial of justice").

Second, and more significant, it would be anomalous to hold that a state rule of civil procedure can effect an expansion of federal court jurisdiction. Just as it is axiomatic that the Federal Rules of Civil Procedure cannot expand federal court jurisdiction, *Aldinger v. Howard,* 427 U.S. at 9, 96 S.Ct. at 2418, it is equally evident that a state procedural rule cannot create ancillary jurisdiction where it would not otherwise exist. Consequently, to the extent that Mo.R.Civ.P. 66.01(c) purports to require a federal court to entertain a state law claim in the absence of any jurisdictional basis, it runs afoul of the Supremacy Clause. U.S. Const. art. VI. Therefore, the Court holds that Mo.R.Civ.P. 66.01(c) does not call for an *ad hoc* exercise of ancillary jurisdiction in this case; instead, it will be sufficient to consider the ancillary jurisdiction issue solely in the context of the federal standard for intervention as of right.

4. If intervention as of right would be permitted under the instant circumstances, it would exalt form over substance to hold that ancillary jurisdiction does not exist merely because Joyce Fritts joined in this lawsuit as a party-plaintiff instead of filing a separate application to intervene.

the instant case.[5] Moreover, although it is unclear whether an adverse decision on Charles Fritts's claim would bar a subsequent action by Joyce Fritts,[6] there is a sufficiently strong possibility of such an occurrence to hold that the third part of the intervention test also has been met. Thus, the focal issue concerning intervention is whether Joyce Fritts's interests would be adequately represented by her husband.

A prospective intervenor's burden of showing inadequacy of representation has been described as "minimal." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Nevertheless, the Court finds that Joyce Fritts's interests would be fully represented by her husband in this lawsuit. Both spouses have been diligently represented by the same counsel throughout this matter. In addition, the interests of both spouses are identical. Consequently, treating Joyce Fritts as an applicant for intervention, it is evident that she would not be granted leave to intervene as of right in this lawsuit because her "application" fails to satisfy the fourth prong of the intervention test. Accordingly, the Court holds that it lacks ancillary jurisdiction over Joyce Fritts's consortium claim.

### III. *No Pendent Party Jurisdiction over Count V*

The argument that Joyce Fritts is a proper pendent party offers the greatest promise to support the Court's jurisdiction over the consortium claim. There are two threshold requirements to the exercise of pendent party jurisdiction. First, in order to fit within the contours of Article III, § 2 of the United States Constitution, the federal claim and the pendent claim must arise out of a common nucleus of operative facts. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. at 371–72, 98 S.Ct. at 2401; *Aldinger v. Howard,* 427 U.S. at 14–19, 96 S.Ct. at 2420–22. Second, to ensure that the pendent party claim comes within the statutory limits of federal subject matter jurisdiction, the Court must examine the posture in which the non-federal claim is asserted and the specific statute that confers jurisdiction over the federal claim in order to decide whether Congress has negated the existence of jurisdiction over the particular non-federal claim. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. at 372–73, 98 S.Ct. at 2401–02; *Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422.

Turning to the facts of the instant case, the Court finds that the first jurisdictional

5. By joining as a party-plaintiff in this lawsuit, Joyce Fritts's assertion of her consortium claim could not be more timely. In addition, it is evident that she has an interest in the main claim herein because her claim is derivative of her husband's action for personal injuries. Indeed, if Mrs. Fritts were to bring a separate, subsequent action against the defendants, it appears that she would be able to assert offensive collateral estoppel in the event of a decision favorable to her husband. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Oates v. Safeco Ins. Corp. of Am.,* 583 S.W.2d 713 (Mo.1979) (en banc).

6. The crucial issue here would be whether, under Missouri law concerning the defensive use of collateral estoppel, a husband and wife are deemed in privity with respect to the latter's claim for loss of consortium. Several older Missouri cases appear to hold that no privity exists under these circumstances. *E.g., Marusic v. Union Electric Co.,* 377 S.W.2d 454, 459 (Mo. 1964); *Elmore v. Illinois Terminal R. Co.,* 301 S.W.2d 44, 48 (Mo.App.1957). These cases are distinguishable, however because they involved

attempts by plaintiff spouses to assert offensive collateral estoppel at a time before Missouri abandoned the doctrine of mutuality; here, the situation would involve the defensive use of collateral estoppel by a defendant who has successfully defended against the injured spouse's lawsuit. Moreover, a separate line of Missouri cases strongly suggests that, since a claim for loss of consortium is derivative of the injured spouse's action for personal injuries, an adverse decision in the main action bars a subsequent consortium claim. *E.g., Burrow v. Moyer,* 519 S.W.2d 568, 572 (Mo.App.1975) (where spouses join as plaintiffs in a single lawsuit and the verdict goes against the injured spouse, the consortium spouse cannot recover as a matter of law). Thus, although it is difficult to predict which line of authority would prevail, it is evident that an adverse decision in Charles Fritts's lawsuit *"may as a practical matter"* impair Joyce Fritts's efforts to protect her right of consortium. Fed.R.Civ.P. 24(a)(2) (emphasis added).

hurdle is easily satisfied; there can be no doubt that Joyce Fritts's consortium claim shares a common nucleus of operative facts with her husband's federal cause of action. Accordingly, the Court holds that Count V meets the constitutional threshhold to federal jurisdiction.

The plaintiffs rely heavily on the factual similarity between the two claims and contend that to require two separate lawsuits for such closely related matters would be grossly inefficient. Although the inefficiency of which plaintiffs complain is not as great as it might appear at first blush,[7] this Court is inclined to agree that maintenance of multiple actions under these circumstances will defeat the goal of judicial economy. Yet, more is involved here than the value of efficiency, for the addition of a pendent plaintiff in this lawsuit would cut against "the well-established principle that federal courts.... are courts of limited jurisdiction marked out by Congress." *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420. Instead, the Court must pay close attention to the posture of the consortium claim and the statutes granting jurisdiction over the main claim in order to decide if Congress intended to allow the exercise of pendent party jurisdiction in a case of this nature. *Id.* at 18, 96 S.Ct. at 2422.

*Aldinger v. Howard* is the leading case concerning pendent party jurisdiction. Un-

fortunately, the Supreme Court set forth an extremely vague standard in that case.[8] Consequently, this Court finds that it has precious little guidance in resolving the difficult and important issue presented here. In *Aldinger*, the Supreme Court dealt with a relatively easy case since it found "express" congressional direction to exclude counties as pendent party defendants where federal jurisdiction rested on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.[9] In the instant case, however, this Court has no more direction from Congress than the plain language of the jurisdiction-granting statutes, 28 U.S.C. §§ 1331, 1343. While neither statute on its face appears to allow the exercise of pendent plaintiff jurisdiction, this Court must confess that there is too little evidence to render its inquiry into congressional intent conclusive. Therefore, instead of attempting to divine congressional intent in a virtual vacuum, the Court deems it a wiser approach to trace the development of pendent party jurisdiction through the case law and to appraise the instant case in the light of this development.

The appropriate starting point is *United Mine Workers of America v. Gibbs*. There, the Supreme Court held that federal jurisdiction over a pendent state law claim exists whenever it shares a "common nucleus of operative fact" with the plaintiff's

7. Initially, it might appear that two separate lawsuits would entail two full-blown trials involving the identical issue of defendant's liability vis-a-vis Charles Fritts. Under prior Missouri law, this would have been true. *See, e.g., Marusic v. Union Electric Co.*, 377 S.W.2d 454, 459 (Mo.1964) (consortium spouse cannot use collateral estoppel against defendant previously held liable to injured spouse). Today, however, both federal and Missouri courts have abandoned the doctrine of mutuality and have opened their doors to the offensive use of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713 (Mo.1979) (en banc). Accordingly, in a subsequent state court action Joyce Fritts should be able to preclude relitigation of all common issues of fact in the event that her husband prevails in this lawsuit.

8. In *Aldinger*, the Court announced:
"Before it can be concluded that [pendent party] jurisdiction exists, a federal court must

satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence."
427 U.S. at 18, 96 S.Ct. at 2422. Although this test appears to be fairly straightforward, the Supreme Court expressly declined to set forth "any sweeping pronouncement upon the exercise or existence of such jurisdiction." *Id.*

9. *Id.* at 15–17, 96 S.Ct. at 2421. It is interesting to note, however, that two years later the Supreme Court held that counties *were* proper party-defendants under § 1983 and § 1343. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, this Court reads *Aldinger* not so much as a mandate to scrutinize the jurisdiction-granting statute, but rather as an expression of general disfavor for pendent party jurisdiction.

federal claim. 86 S.Ct. at 1138. In the wake of *Gibbs*, the United States Court of Appeals for the Eighth Circuit recognized pendent plaintiff jurisdiction over a wife's claim for loss of consortium where the federal court had jurisdiction over the injured husband's lawsuit. *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809 (8th Cir. 1969) (Blackmun, J.).[10] *Hatridge* involved a state court action brought by both spouses which was removed to federal court in its entirety even though the wife's claim did not satisfy the requisite amount for diversity jurisdiction.[11] *Id.* at 814–16. Despite the lack of independent subject matter jurisdiction, the Eighth Circuit relied on *Gibbs* and held that pendent jurisdiction existed over the wife. The court explained that pendent jurisdiction in such a case "makes good sense; it avoids forum shopping and multiple actions; it tends to reduce costs for litigants; and it avoids the waste of already heavily burdened judicial time." *Id.* at 817.

The validity of the *Hatridge* case was subsequently thrown into doubt by three Supreme Court cases decided in the following decade. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Court held that where jurisdiction over a class action is predicated on diversity of citizenship, each class member's claim must independently satisfy the jurisdictional amount. In so holding, the Court refused to permit the plaintiffs to aggregate their claims in order to confer jurisdiction on the federal court even though their factual allegations were virtually identical. Next, in *Aldinger v.*

*Howard*, the Court distinguished between the doctrine of pendent claims and the concept of pendent parties, and indicated that the jurisdictional barriers to the latter are quite restrictive. 427 U.S. at 14–16, 96 S.Ct. at 2420–21. The only instance in which the Court expressly suggested that pendent party jurisdiction might exist is where the federal courts enjoy *exclusive* jurisdiction over the federal claim. *Id.* at 18, 96 S.Ct. at 2422. Finally, in *Owen Equip. & Erection Co. v. Kroger*, the Court held that a plaintiff may not assert a claim against a third-party defendant in the absence of an independent jurisdictional basis. In so holding, the Court noted that the advancement of judicial economy is not in itself a sufficient reason to expand a federal court's jurisdiction, particularly where the efficiency sought by the plaintiff was available at all times in the state courts. 437 U.S. at 374–77, 98 S.Ct. at 2403–04.

Recognizing the impact of *Zahn, Aldinger*, and *Kroger*, the Eighth Circuit has noted that *Hatridge* probably is no longer good law. *North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 372 n. 7 (8th Cir.1980). This Court agrees. Accordingly, the Court holds that it lacks pendent plaintiff jurisdiction over Joyce Fritts's claim for loss of consortium. This holding is in accord with the decisions of virtually all federal courts that have considered this issue recently. *See Red Elk v. Vig*, 571 F.Supp. 422 (D.S.D.1983) (no pendent plaintiff jurisdiction over wrongful death claim); *Buikema v. Hayes*, 562 F.Supp. 910 (N.D.Ill.1983) (no pendent

---

10. *But see Hymer v. Chai*, 407 F.2d 136 (9th Cir.1969) (refusing to recognize pendent plaintiff jurisdiction over consortium claim).

11. The fact that *Hatridge* initially arose in state court may explain why the court found that federal jurisdiction over the consortium claim existed. *See* 28 U.S.C. § 1441(c) (entire lawsuit can be removed to federal court where any claim therein is removable). Under *Aldinger*, pendent party jurisdiction arguably existed in *Hatridge* because there was a common nucleus of operative fact *and* a statute expressly granting jurisdiction over the entire case. Indeed, if the instant case had been filed in state court and had been removed by the defendants, this Court

would hold that pendent plaintiff jurisdiction over Joyce Fritts exists because of the existence of a statute allowing federal jurisdiction. Since this lawsuit was originally filed in federal court, however, § 1441(c) is not available to support pendent jurisdiction. At first glance, this distinction may appear arbitrary. On closer inspection, however, it seems to make sense because federal removal jurisdiction is derivative of the state court's jurisdiction, *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922), and state trial courts, unlike federal district courts, are courts of general jurisdiction. *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420.

plaintiff jurisdiction over loss of consortium claim); *Walters v. Village of Oak Lawn*, 548 F.Supp. 417 (N.D.Ill.1982) (same); *Leopold v. Birkett*, 523 F.Supp. 525 (E.D.N.Y.1981) (same).

The Court's holding rests upon the elementary fact that federal courts enjoy only limited jurisdiction as circumscribed by Congress.[12] Simply stated, there is no statute in existence which even arguably confers federal jurisdiction over Joyce Fritts's consortium claim.[13] In addition, there are no extraordinary circumstances present here which militate in favor of an *ad hoc* exercise of pendent party jurisdiction.[14] It is true that it would be more efficient if this Court were to entertain Count V; however, "the addition of a completely new party would run counter to the well-established principle that federal courts, opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction." *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420. Moreover, the efficiency sought by plaintiffs was at all times available in Missouri state court. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404. Finally, the Court notes that the exercise of pendent plaintiff jurisdiction here would extend well beyond the type of pendent defendant jurisdiction which the Supreme Court rejected in *Aldinger;* instead, the instant situation most closely resembles *Zahn*, where the Supreme Court forcefully repudiated the assertion of pendent plaintiff jurisdiction despite the fact that the federal and non-federal claims arose from a "common nucleus of operative fact." Consequently, in the absence of an independent basis for subject matter jurisdiction, this Court is constrained to dismiss Count V for want of federal jurisdiction.

## IV. CONCLUSION

In the final analysis, there is no clear answer to the "subtle and complex" issue presented here. Courts and litigants alike are in need of guidance, for the uncertainty attendant to this issue can have devastating effects.[15] Consequently, this Court be-

---

**12.** Although Fed.R.Civ.P. 20 would permit joinder of Charles and Joyce Fritts's claims if jurisdiction exists, it is axiomatic that "the Federal Rules themselves cannot expand federal-court jurisdiction." *Aldinger v. Howard*, 427 U.S. at 9, 96 S.Ct. at 2418.

**13.** It bears emphasis that the result in this case would have been different if it had been filed initially in state court and removed to federal court by the defendant. *See* note 11 *supra.* There are two fundamental distinctions between the instant case, which was originally filed in federal court, and a removal case. First, as discussed in note 11 *supra,* there is a statute tacitly authorizing the discretionary exercise of pendent jurisdiction in removal cases. *See* 28 U.S.C. § 1441(c) (whenever removable and non-removable claims are joined in a single lawsuit, "the district court may determine all matters therein, or in its discretion, may remand all matters not otherwise within its original jurisdiction"). The existence of § 1441(c) is important because *Aldinger* directs the lower federal courts to examine the posture of the non-federal claim and the scope of the jurisdiction-granting statute. Where, as here, the case was initially filed in federal court, both the posture of the non-federal claim and the scope of the jurisdiction-granting statutes are vastly different.

The second distinction between the instant case and a removal case is that the type of pendent jurisdiction asserted here is strictly a matter of the plaintiffs' choice while removal is a matter of defendant's prerogative. Although § 1441(c) prevents the defendant from picking and choosing which claims will be removed to federal court, the initiative whether or not to remove always remains with the defendant. In effect, Congress has said through § 1441(c) that where the defendant exercises the privilege of removal, he must accept the burden with the benefit. But pendent jurisdiction in a non-removal context like the instant case would be radically different because the defendant was never given the initial choice of whether or not to remove. *Cf. Owen Equip. & Erection Co. v. Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404 (refusing to recognize jurisdiction over non-federal claim "voluntarily" brought by plaintiff in federal court).

**14.** *Cf. Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. at 2422.

**15.** Absent a clear precedent on this issue, courts and litigants can lose two separate ways. First, if the court dismisses the consortium claim when it actually had jurisdiction, the result deprives the pendent plaintiff of a federal forum and detracts from the goal of judicial economy. On the other hand, if the district court should have dismissed the consortium claim for want of jurisdiction but fails to do so, the pendent plaintiff runs the risk of losing a favorable verdict on appeal.

lieves that it would be beneficial to future litigants as well as the parties in this case to render a separate final judgment of dismissal on Count V in the hope that the appellate court can rule on this important question as soon as possible. In so doing, the Court notes that its holding is a pure ruling of law; although many district courts bolster their dismissals of pendent plaintiff claims by stating that they would exercise discretion to reach the same result even if they had jurisdictional power, *e.g.*, *Red Elk v. Vig*, 571 F.Supp. at 426 n. 6, this Court wishes to emphasize that if it had discretion to entertain Count V, it would readily do so in the interests of judicial economy. Accordingly, it is hereby

ORDERED that Count V—Joyce Fritts's loss of consortium claim—is dismissed for want of federal subject matter jurisdiction. It is further

ORDERED that, there being no just reason for delay, the dismissal of Count V shall be entered by the Clerk of the Court as a separate final judgment pursuant to Fed.R.Civ.P. 54(b).